UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 98-10762

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RICHARD LANCE MCLAREN; LINH NGOC VU; EVELYN ANN
MCLAREN; JASPER EDWARD BACCUS; RICHARD GEORGE
KIENINGER; ERWIN LEO BROWN; JOE LOUIS REECE;
STEVEN CRAIG CREAR,

Defendants-Appellants.

Appeals from the United States District Court
For the Northern District of Texas
(3:97-CR-128-1-G)

August 17, 2000

Before JOLLY and DeMOSS, Circuit Judges, and DOWD,[*] District Judge.

DeMOSS, Circuit Judge:[**]

Defendants Steven Craig Crear, Linh Ngoc Vu, Richard George

Kieninger, Erwin Leo Brown, Jasper Edward Baccus, Joe Louis Reece,

Evelyn Ann McLaren, and Richard Lance McLaren appeal their criminal

---

[*]District Judge of the Northern District of Ohio, sitting by
designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

convictions on multiple counts of mail fraud and bank fraud. Defendant Vu also appeals the sentence imposed upon him by the district court. We affirm.

Each of the eight defendants were either members or affiliates of the Republic of Texas, a Texas-based secessionist group and self-proclaimed sovereign nation located within the United States. Defendants Richard and Evelyn McLaren were at all material times husband and wife, who lived for many years in a secluded semi-rural subdivision in the Davis Mountains near Fort Davis, Texas. While in the process of conducting title research on their property, the McLarens became convinced that Texas was not legally annexed by the United States. In the early 1990s, the McLarens were part of a group of people who founded the Republic of Texas based upon the belief that Texas remained a sovereign nation. The organization was based near Fort Davis, Texas, at a site declared to be the Republic of Texas embassy.

After formation, the Republic of Texas set up a provisional government and tried to get the State of Texas and the United States to recognize that Texas was never lawfully annexed by the United States. Richard McLaren was named chief foreign ambassador and legal officer for the organization. At some point, the independent Republic of Texas court system entered a default judgment in favor of the Republic of Texas and against the State of Texas, granting the Republic of Texas all of the assets held by the State of Texas. Richard McLaren subsequently filed UCC notice of

lien forms evidencing the default judgment in various locations.

The defendants claim that they believed, on the basis of this documentation, that the Republic of Texas enjoyed full ownership of the assets of the State of Texas. The Republic of Texas then began recruiting new members across the state, some of whom were to be involved in the establishment of Republic of Texas banks. During the recruitment campaign, the Republic of Texas, devised a cash-generating scheme in which persons would be granted a Republic of Texas bank charter in exchange for a cash payment to the Republic of Texas. Some of the defendants were promised jobs and substantial salaries as banking officers. For example, defendant Crear, who was then a security guard incapacitated by a work-related injury, was offered $250,000 per year.

The Republic of Texas, aided and instructed by an individual named Arthur Griesacker, also devised a scheme for using financial instruments referred to as "warrants" to secure the desired assets from the treasury of the State of Texas. Griesacker, who previously worked with secessionist groups in several other states, purported to be an expert in such matters. The scheme involved the use of form drafts or "warrants" similar to checks. The warrants, which were issued with identifying serial numbers, were ordered from a commercial printer. The documents were then made out to a particular payee. In some cases, the warrants were used to make payment for various credit card purchases or to obtain a cash advance or other advantage from the credit card issuer. In others,

3

the warrants were presented directly to various individuals or banks as payment for goods or services, or in exchange for cash or its equivalent.  In all cases, the intent was to use the warrants, which were both non-negotiable and worthless, to obtain goods or funds for Republic of Texas use.  Typically, the recipient of the fraudulent document would present the draft for payment to the payor or warrantor on the draft, which was a trust established by the Republic of Texas.  The scheme called for the eventual presentation of the warrants to the State of Texas for payment on the authority of the default judgment and liens.  The defendants' criminal conduct in this case, as alleged in the various counts of a twenty-six count superseding indictment, relates to the unlawful scheme to secure money using the warrants, and more specifically, to the individual defendants' conduct in purchasing, executing, mailing, receiving, or presenting the warrants.  According to the indictment, this unlawful conduct occurred between December 1995 and November 1997, when an indictment was returned charging each of the defendants.

## II.

A superseding indictment entered November 6, 1997 charged each defendant with conspiracy to commit mail fraud and bank fraud, and with substantive counts of mail fraud or bank fraud or both.  The case was tried to a jury over a six week period beginning in early

4

March 1998 and ending in mid-April 1998.  At trial, the government produced a virtual mountain of relevant and probative documentary, videotape, and testimonial evidence.  The jury returned guilty verdicts as set forth below.

Defendant Crear was charged with conspiracy to commit mail fraud and bank fraud (count 1), and five counts of mail fraud (counts 8, 9, 10, 11, and 20).  Crear was convicted on all charged counts.  In October 1998, Crear was sentenced to 27 months on each count, to run concurrently.

Defendant Vu was charged with conspiracy to commit mail fraud and bank fraud (count 1), and two counts of mail fraud (counts 25 and 26).  Vu was convicted on one count of mail fraud (count 25), but acquitted on the conspiracy count (count 1) and the other mail fraud count (count 26).  In August 1998, Vu was sentenced to 21 months imprisonment.

Defendant Kieninger was charged with conspiracy to commit mail fraud and bank fraud (count 1), fourteen counts of mail fraud (counts 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 25), and four counts of bank fraud (counts 21, 22, 23, and 24).  Kieninger was convicted on all charged counts.  In August 1998, Kieninger was sentenced to 21 months on each count, to run concurrently.

Defendant Brown was charged with conspiracy to commit mail fraud and bank fraud (count 1), and six counts of mail fraud (counts 12, 13, 14, 15, 16, and 17).  Brown was convicted on all

5

six counts of mail fraud, but acquitted of the conspiracy charge. In September 1998, Brown was sentenced to 21 months on each count, to run concurrently.

Defendant Baccus was charged with conspiracy to commit mail fraud and bank fraud (count 1), two counts of mail fraud (counts 3 and 4), and two counts of bank fraud (counts 22 and 23). Baccus was convicted on one count of bank fraud (count 22), but acquitted of the conspiracy charge, the two mail fraud counts, and the remaining bank fraud count. In July 1998, Baccus was sentenced to 21 months imprisonment.

Defendant Reece was charged with conspiracy to commit mail fraud and bank fraud (count 1), one count of mail fraud (count 5), and one count of bank fraud (count 24). Reece was convicted on one count of bank fraud (count 24), but acquitted on the conspiracy charge and the mail fraud count. In October 1998, Reece was sentenced to 21 months imprisonment.

Defendant Evelyn McLaren was charged with conspiracy to commit mail fraud and bank fraud (count 1), four counts of mail fraud (counts 2, 6, 7, and 19), and one count of bank fraud (count 21). Evelyn McLaren was convicted on the conspiracy charge, on two of the four counts of mail fraud (counts 6 and 19), and on the bank fraud count (count 21). Evelyn McLaren was sentenced to 27 months on each count, to run concurrently.

Defendant Richard McLaren was charged and convicted on all twenty-six counts of the indictment, which included the conspiracy

6

count (count 1), twenty-one counts of mail fraud (counts 2-20, 25, and 26), and four counts of bank fraud (counts 21, 22, 23, and 24). McLaren was sentenced to a term of 151 months on each of counts 2 through 7 and counts 21 through 26, and a term of 60 months on each of count 1 and counts 8 through 20, all to be served concurrently.

The defendants filed timely notices of appeal, and have raised numerous issues which, taken cumulatively, allege reversible error at virtually every stage of this lengthy trial. We have carefully reviewed each of those issues in light of the defendants' arguments on appeal and the relevant portions of the record, and have concluded that the district court should in all respects be affirmed. Only one of the defendants' issues merits further discussion for purposes of this opinion.

**III.**

Each of the defendants maintains that the government failed to disclose exculpatory evidence in violation of its duty under *Brady v. Maryland*, 83 S. Ct. 1194 (1963). Specifically, the defendants maintain that the government was obligated to disclose an F.B.I. file and other materials in the government's possession relating to Republic of Texas affiliate Arthur Griesacker. The defendants claim that Griesacker was a government informant and that the government's failure to disclose Griesacker's F.B.I. file precluded them from presenting a viable entrapment defense that could have

7

changed the result at their trial.

The defendants preserved error on this point by moving for disclosure of Griesacker's F.B.I. file and other materials relating to Griesacker prior to trial. The government responded that, based upon the personal investigation of the prosecutor in this case, Griesacker was not a government agent or informant for any federal law enforcement agency. The government further produced certain responsive materials, including Griesacker's F.B.I. file. The district court conducted an in camera review of the materials and concluded that neither the F.B.I. file nor the remaining materials contained any **Brady** material. The defendants made a second motion for disclosure at trial, which was likewise denied on the basis of the district court's earlier in camera review.

The defendants bolster their supposition that Griesacker was a government informant with reference to several other facts. First, the defendants note that Griesacker's claimed financial and legal expertise was all the more credible to Republic of Texas members because Griesacker had apparently eluded prosecution for similar conduct in the other states. In this vein, the defendants claim that they held a good faith belief in the legality of the scheme to use warrants as a result of Griesacker's representations. In hindsight, the defendants maintain that the only explanation for Griesacker's ability to avoid prosecution is that he must have been a government informant. The defendants support this premise with

8

a NCIC report demonstrating that there was a federal warrant for Griesacker's arrest during the time that Griesacker was working with Republic of Texas officials. Notwithstanding the fact that there was an outstanding arrest warrant, Griesacker was not arrested until after these defendants were indicted. The defendants also rely upon a document prepared by the New York State Banking Department, which states the Texas Attorney General's recommendation that negotiable instruments presented by the Republic of Texas or Griesacker personally not be honored. The defendants argue that this shows government knowledge of Griesacker's whereabouts and his affiliation with the Republic of Texas during this time period. Finally, the defendants note that the government failed to indict Griesacker for his own role in the warrant scheme in this case.[1]

To establish a *Brady* violation, the defendants must show: (1) that the prosecution suppressed evidence, (2) that the evidence was favorable to their case, and (3) that the favorable evidence was material to their case. *See United States v. Green*, 46 F.3d 461, 464 (5th Cir. 1995). When the district court has reviewed materials alleged to contain *Brady* material in camera, and has

---

[1]We note that Griesacker did not testify at trial. Although the defense tried to call him as a witness after he was arrested on the outstanding warrant, Griesacker refused to testify unless he received "sovereign judicial diplomatic immunity." The district court held Griesacker in civil contempt and ordered a psychiatric evaluation to determine his competency. He was later found to be competent, but still did not testify.

determined that the materials do not in fact contain **Brady** material, this Court's standard of review is very deferential. *See id*. Ordinarily, we will not go beyond a district court's determination that there is no **Brady** material to determine whether exculpatory materials were withheld. ***Jones v. Butler***, 864 F.2d 348, 356 (5th Cir. 1988). In this case, however, and based upon our review of the record evidence, we were struck by the pivotal role that Griesacker played in the scheme to defraud. Griesacker claimed to be able to secure assets from the State of Texas based upon his extensive experience with several other state militia or secessionist groups. Griesacker instructed members of the Republic of Texas in the use and feasibility of the warrants as a means to accomplish this objective. Videotape evidence shows Griesacker to be a zealous teacher, who often insisted on a particular course of action, notwithstanding the initial resistance by some Republic of Texas members. Given Griesacker's pivotal role in the scheme to defraud, we have, in an abundance of caution, expanded our review beyond what is absolutely required to include a de novo review of both the materials reviewed by the district court in camera as well as the additional documentation relied upon by the defendants in this appeal. Having concluded that review, we affirm the district court.

Griesacker's F.B.I. file contains absolutely no indication that Griesacker is or ever was a government informant. Indeed,

without revealing the specific contents of the file itself, which remains under seal, we can state with confidence that there are concrete indications to the contrary. Likewise, the remaining facts relied upon by the defendants do not tend to establish that Griesacker was a government informant. It is true that there was an outstanding warrant for Griesacker's arrest during the time that he was working with Republic of Texas members. The warrant was issued on the basis of Griesacker's involvement with a Kansas-based group perpetuating a scheme to defraud similar to the unlawful scheme at issue in this case. Likewise, we can probably assume that, as a result of ongoing surveillance of Republic of Texas activities, federal law enforcement officers were aware of Griesacker's developing relationship with the Republic of Texas group. Neither of those facts, however, tends to establish that there was any considered decision not to enforce the arrest warrant for Griesacker, let alone that such a decision was made on the basis that Griesacker was cooperating with the government. To the contrary, the record reflects that Griesacker was eventually arrested pursuant to the federal warrant and prosecuted in federal district court. While it is true that the government elected not to indict Griesacker on the basis of his conduct in this case, a decision that the government attributes to problems with the proof against Griesacker, Griesacker's sentence in the Kansas case is more than twice as long as that of any of the eight defendants in this case, with the exception of defendant Richard McLaren. In a

11

post-argument filing made available to this Court, the prosecutor in Griesacker's case has likewise confirmed that, based upon personal investigation, Griesacker was never an F.B.I. informant. Similarly, the document prepared by the New York State Banking Department is of no probative value with respect to whether Griesacker was a government informant. At the very most, that document merely reflects that Texas state law enforcement had reason to question the legitimacy of negotiable instruments presented by the Republic of Texas or Griesacker.

We conclude that the defendants' *Brady* claim is premised upon mere speculation that is not supported by the record. Stated simply, there is no evidentiary support in this record for the defendants' speculation that Griesbacker could have been a government informant. Indeed, this record, including the materials reviewed in camera by the district court and this Court, strongly supports the contrary conclusion; that is, that Griesbacker was not a government informant. *See Hughes v. Johnson*, 191 F.3d 607, 629-30 (5th Cir. 1999) (mere speculation does not adequately support a claim for relief under *Brady*), *cert. denied*, 120 S. Ct. 1003 (2000). We therefore affirm the district court's decision denying the defendants' motion for disclosure pursuant to *Brady*.

## CONCLUSION

For the foregoing reasons, the district court is in all

12

respects AFFIRMED.